Bradley C. Gage, Esq., Cal. S.B. No. 117808
Email: brad@bradgagelaw.com
Milad Sadr, Esq., Cal. S.B. No. 245080
Email: milad@bradgagelaw.com
BRAD GAGE LAW, APC
23002 Victory Boulevard
Woodland Hills, California 91367
Tel: (818) 340-9252  Fax: (818) 340-9088

Attorneys for Plaintiffs,
TIFFANY SHERNAMAN-VINYARD, WIFE OF KEITH VINYARD INDIVIDUALLY
AND AS (GUARDIAN AD LITEM) FOR D. V. (A MINOR, SON OF KEITH
VINYARD); W.V. (A MINOR, SON OF KEITH); M. S-V (A MINOR, DAUGHTER OF
KEITH VINYARD); K.S. (A MINOR, SON OF KEITH VINYARD) AND E. S- C (A
MINOR, SON OF KEITH VINYARD), THE ESTATE OF KEITH VINYARD
(DECEDENT)

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| TIFFANY SHERNAMAN-VINYARD, WIFE OF KEITH VINYARD INDIVIDUALLY, AS SUCCESSOR IN INTEREST FOR KEITH VINYARD AND AS (GUARDIAN AD LITEM) FOR D. V. (A MINOR, SON OF KEITH VINYARD); W.V. (A MINOR, SON OF KEITH); M. S-V (A MINOR, DAUGHTER OF KEITH VINYARD) K.S. (A MINOR, SON OF KEITH VINYARD) AND E. S- C (A MINOR, SON OF KEITH VINYARD), THE ESTATE OF KEITH VINYARD (DECEDENT) | Case No. |

Plaintiffs,

v.

COUNTY OF SAN BERNARDINO, SHANNON D. DICUS, SHERIFF, AND JEREMY DEAN, CAPTAIN OF THE HESPERIA PATROL STATION, WORKING IN THE CAPACITY OF THE ACTING CHIEF OF POLICE. and DOES 1-10, inclusive,

Defendants.

**COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**

1. UNREASONABLE SEIZURE OF PERSON- 4th AMENDMENT VIOLATION UNDER 42 USC SECTION 1983.
2. DELIBERATE INDIFFERENCE TO MEDICAL NEEDS
3. MONELL LIABILITY
4. CIVIL BATTERY AND ASSAULT
5. WRONGFUL DEATH
6. NEGLIGENCE
7. BANE ACT
8. FAILURE TO FURNISH / SUMMON MEDICAL CARE

**GENERAL ALLEGATIONS**

1. COME NOW, TIFFANY SHERNAMAN-VINYARD, WIFE OF KEITH VINYARD INDIVIDUALLY, AS SUCCESSOR IN INTEREST FOR KEITH VINYARD  AND AS (GUARDIAN AD LITEM) FOR D. V. (A MINOR, SON OF KEITH VINYARD); W.V. (A MINOR, SON OF KEITH); M. S-V (A MINOR, DAUGHTER OF KEITH VINYARD); K.S. (A MINOR, SON OF KEITH VINYARD) E. S- C (A MINOR, SON OF KEITH VINYARD), AND THE ESTATE OF KEITH VINYARD (DECEDENT) , who demand a jury trial and seek monetary compensation against all Defendants, as follows:

## SUMMARY OF CLAIMS

2. On March 23, 2024, Keith Vinyard was shot and killed by San Bernardino County Sheriffs Deputies.  He did not need to die.  Their actions violated the civil rights of Mr. Vinyard and his family.  This lawsuit seeks justice for Keith and the family that loved him, and misses him.

3. The actions of the defendants constituted an assault, a battery, violation of State and Federal Civil Rights Acts including without limitation the Bane Act, Ralph Act and 42 USC, section 1983.   The actions of the defendants were also negligent, created an intentional and negligent infliction of emotional distress and caused the wrongful death of Mr. Vinyard.

## VENUE AND JURISDICTION

4. This Court has original jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343(a)(3)-(4) because Plaintiffs assert claims arising under the laws of the United States including 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution. Venue is proper in this Court under 28 U.S.C. § 1391(b) because Defendants reside in this district and all incidents, events, and occurrences giving rise to this action occurred in this district.

## THE PARTIES

5. Plaintiff TIFFANY SHERNAMAN-VINYARD, at all times mentioned herein, was an individual residing in the City of Hesperia, State of California. TIFFANY

SHERNAMAN-VINYARD is the wife of the decedent, KEITH VINYARD. TIFFANY SHERNAMAN-VINYARD**,** sues as an individual in her own right, and as the Personal Representative of the Estate of KEITH VINYARDuise Adams, as defined by Section 377.60 of the California Code of Civil Procedure, as a successor in interest, heir, and personal legal representative of the decedent, as well as the Guardian ad Litem for the minor children to seek redress for the deprivation of the decedent's rights and for those damages that the decedent sustained and incurred before death, and that the decedent would have been entitled to recover, had he lived as defined by Section 377.34 of the California Code of Civil Procedure.

6.   Plaintiffs, D. V. (A MINOR, SON OF KEITH VINYARD); W.V. (A MINOR, SON OF KEITH); M. S-V (A MINOR, DAUGHTER OF KEITH VINYARD); K.S. (A MINOR, SON OF KEITH VINYARD); AND E. S- C (A MINOR, SON OF KEITH VINYARD), at all times mentioned herein, were individuals residing in the COUNTY of Hesperia, State of California.  The minor plaintiffs are the children of decedent, KEITH VINYARD.  Plaintiffs**,** sue as individuals in their own right, and as the Personal Representatives of the Estate of KEITH VINYARD, as defined by Section 377.60 of the California Code of Civil Procedure, as a successor in interest, heir, and personal legal representative of the decedent to seek redress for the deprivation of the decedent's rights and for those damages that the decedent sustained and incurred before death, and the decedent would have been entitled to recover, had he lived as defined by Section 377.34 of the California Code of Civil Procedure.

7.   Plaintiffs are informed and believe, and thereon allege that, at all relevant times herein, Defendant, COUNTY OF SAN BERNARDINO (hereinafter "COUNTY" or "defendant COUNTY" or "Defendants"), was a public entity duly organized and existing under the laws of the State of California.

8.  Defendant County of San Bernardino is a Municipality and employer, of other defendants, con conspirator with other defendants, joint venturer, or in some other relationship with each of the other defendants.  It is designated herein as Defendant, Defendants, OR County

9.  The policy makers in charge of the discriminatory practices were Defendants JEREMY DEAN, Captain of the Hesperia Patrol Station, working in the capacity of the Acting Chief of Police and Sheriff SHANNON D. DICUS (Hereinafter also collectively referred to as "Defendants.")

10. Defendants DOES 1-5 ("DOE POLICE OFFICERS") are peace officers working for the County of San Bernardino Sheriff's Department ("SBSD"). At all relevant times, DOE POLICE OFFICERS were acting under color of law within the course and scope of their duties as peace officers for the SBSD. DOE POLICE OFFICERS were acting with the complete authority and ratification of their principal, Defendant CITY.

11. Defendants DOES 6-10 are managerial, supervisorial, and policymaking employees of the SBSD, who were acting under color of law within the course and scope of their duties as managerial, supervisorial, and policymaking employees for the SBSD. DOES 6-10 were acting with the complete authority and ratification of their principal, Defendant CITY.  Said Defendants are also designated herein as part of the DOE POLICE OFFICERS.

12. On information and belief, DOES 1-10 were residents of the County of San Bernardino and the Central District.

13. In doing the acts and failing and omitting to act as hereinafter described, Defendants DOE POLICE OFFICERS were acting on the implied and actual permission and consent of Defendants DOES 1-10 and the CITY.

14. The true names and capacities, whether individual, corporate, association or otherwise of Defendants DOES 1-10, inclusive, are unknown to Plaintiffs, who otherwise sue these Defendants by such fictitious names. Plaintiffs will seek leave

to amend their complaint to show the true names and capacity of these Defendants when they have been ascertained. Each of the fictitiously-named Defendants is responsible in some manner for the conduct or liabilities alleged herein.

15. At all times mentioned herein, each and every defendant was the co-conspirator with, and/or agent of each and every other defendant and had the legal duty to oversee and supervise the hiring, conduct, and employment of each and every defendant.

16. All of the acts complained of herein by Plaintiffs against Defendants were done and performed by said Defendants by and through their authorized agents, servants, and/or employees, all of whom at all relevant times herein were acting within the course, purpose, and scope of said agency, service, and/or employment capacity. Moreover, Defendants and their agents ratified all of the acts complained of herein.

17. DOES 1-10 are sued in their individual capacity as well as representative capacities.

18. On or about April 25, 2024, Plaintiffs filed comprehensive and timely claims for damages with the COUNTY, as well as the City of Hesperia pursuant to applicable sections of the California Government Code.

## FACTUAL ALLEGATIONS

19. On March 23, 2024, Keith Vinyard was shot and killed by San Bernardino County Sheriffs Deputies and Hesperia Police Officers.  He did not need to die.  Their actions violated the civil rights of Mr. Vinyard and his family.    Here is what occurred:

20. On March 23, 2024 at approximately 2130-2150 hours, deputies from the San Bernardino County Sheriff's Department – Hesperia Station were attempting to locate Mr. Keith Vinyard and  arrest him for an outstanding warrant.  Deputies responded to his wife's home and, after they were unable to locate him there, subsequently found him driving nearby.  Deputies claim they initiated a traffic stop

and Mr. Vinyard failed to yield, leading deputies on a vehicle pursuit.  The pursuit terminated when Mr. Vinyard crashed his compact Buick Encore SUV into a dirt gulley near the 15400 block of Halinor Avenue in the City of Hesperia.  A short time after the pursuit ended, on-scene law enforcement personnel shot and killed Mr. Vinyard.

21. Initial media reports, citing sources from within the San Bernardino County Sheriff's Department, indicate that at the termination of the pursuit, Mr. Vinyard was shot and killed when he "…confronted the officers militantly while equipping himself with a large metal object and threatening violence."  That report was untrue.  Mr. Vinyard was not threatening the officers at all.  He was not holding any such object and he did not leave his car before being shot multiple times.

22. It was further reported that deputies immediately initiated life-saving  efforts which continued until the arrival of emergency medical personnel.  However, those reports were wrong.  Deputies did not render any type of life saving efforts until the ambulance was heard, and they just performed a perfunctory effort of supposed life saving measures to make it appear they were not engaged in deliberate indifference to Mr. Vinyard's needs.

23. Based on information and belief, the officers were standing around Mr. Vinyard for  approximately 10 minutes before they fired approximately 3-6 gunshots.  Mr. Vinyard suffered with pain, suffering and agony after being shot and before he died.  Subsequently deputies, with guns drawn, approached Mr. Vinyard's vehicle. They appeared to force open the driver's side door of Mr. Vinyard's vehicle in order to dislodge the door from the dirt and remove his apparently lifeless body from the vehicle. Deputies laid Mr. Vinyard's body on the ground and made no attempts to perform life-saving efforts for approximately 10-15 minutes. They appeared to intentionally stand in a manner that shielded Mr. Vinyard's body from public view, hoping to obscure the truth and hide their wrongdoing.

24. Upon the arrival of emergency medical personnel, one of the deputies kneeled

down to Mr. Vinyard's body and appeared to be pretending to perform CPR until relieved by medical personnel.

25.    During the immediate aftermath of the shooting, deputies were seen speaking to each other in very low voices and walking indirect routes around the shooting scene in what appeared to be an obvious attempt to prevent onlookers from seeing or hearing what they were doing.

26.    The San Bernardino County Sheriff's Department have conceded publicly that Mr. Vinyard did not possess a firearm at the time he was shot to death nor did they make any assertion that he possessed any type of projectile weapon that could have been used to assault any on-scene law enforcement personnel.  There was no credible threat to law enforcement and thus, no justification for them to use lethal force.   Mr. Vinyard did not exit his vehicle at the termination of the vehicle pursuit and crash into the gulley. His front driver's side door could only be opened slightly (about 13") due to the surrounding terrain. The right front passenger seat was stacked with personal belongings that would have made it very difficult for a man of his size to crawl over the center console and exit the passenger side of the compact SUV he was driving. Mr. Vinyard did not exit the vehicle until he was dragged out by deputies after being shot.

27.    Between January 29, 2024, and prior to March 23, 2024, Mr. Vinyard traveled to Iowa and then to Las Vegas. While in Las Vegas, he was pulled over by a law enforcement agency who advised him that he had an outstanding  warrant in California. They did not arrest him.  The fact that Mr. Vinyard had prior contacts with law enforcement without any violence underscores why there was no justification for the defendants in this case to use any force or violence upon him in violation of his civil rights, the Bane Act, Ralph Act and other State civil claims.

28.    Defendants employed poor tactics.  At the termination of the pursuit, based on information and belief, deputies yelled at Mr. Vinyard to get out of the car before the shooting occurred. Modern law enforcement tactics dictate that when

deputies/officers encounter a suspect who does not respond as ordered while in a stopped vehicle, absent exigent circumstances, the situation should be treated as a barricaded suspect. In this case, deputies are responsible for containing the scene, maintaining observation of the vehicle and the occupants from a position of cover/concealment, and requesting specialized resources such as crisis negotiators and special weapons and tactics teams. These tactics could and should have been followed to provide the maximum opportunity for the peaceful and safe apprehension of Mr. Vinyard.  The failure to employ adequate tactics demonstrates general negligence including negligent supervision and negligent retention of officers/deputies that based on information and belief have prior incidents of excessive force and racial profiling.  The actions were also an assault, battery and civil rights violation.

29.   The pursuit ended at the 15400 block of Halimor Street in Hesperia.  Two deputies were present and it is believed both fired through the passenger side door/window at Mr. Vinyard.  Defendants have not released the deputies names yet.  Instead, Deputies falsely reported that Mr. Vinyard threatened to shoot the deputies.  This is false.  He had no gun.  He made no such threat. Mr. Vinyard was stuck in a ditch and could not get out of the car in any event.  The area was well lit by helicopter lights providing deputies and officers with a clear vision of Mr. Vinyard who was needlessly killed, while the community was placed in danger because of officers wanton disregard of the safety of the community when shooting their guns without justification.

30.   Defendants were deliberately indifferent to the medical needs of Mr. Vinyard. They dragged the body out and stood side by side like they were blocking citizen's views.   EMTs didn't arrive until ten or fifteen minutes later.   Only when EMTs showed up did one officer lean down like he was performing CPR.  It looked like the officer pretended to do CPR as a show to the EMT truck that was driving up.

31.   Based on information and belief.  Mr. Vinyard was not taken to the hospital.

**COMPLAINT FOR DAMAGES DEMAND FOR JURY TRIAL          8**

Instead, he remained in the street for hours at least, until the coroner arrived on or about March 24, 2024.

32. Based on information and belief, Defendants have prior complaints of excessive force, covering up such claims and or writing or making false allegations in police reports and/or other acts of violence or excessive force brought against defendant COUNTY.

33. As a direct and legal result of Defendants' excessive force, KEITH succumbed to his gun shot wounds and died shortly after. After KEITH's unjustifiable shooting, he was left suffering on the cold hard pavement. Before he died, KEITH suffered with extreme pain, suffering and emotional distress.

34. The action of the defendants were deliberately indifferent, intentional, and or otherwise a legal cause of the harm and injury to KEITH. Moreover, they were carried out with malice, fraud and/or oppression in conscious disregard of the health, safety and life of Mr. Vinyard. Accordingly, punitive damages are sought against the individual defendants (but not Municipal defendants as they are immune from punitive damages.) Economic and non economic damages are sought against all defendants, as are litigation costs, civil penalties, attorneys fees and such other damages as proven at time of trial, and in excess of the minimum jurisdiction of this court..

**FIRST CLAIM FOR RELIEF**

**FOR UNREASONABLE SEIZURE OF PERSON**

**BY THE PLAINTIFFS**

**AGAINST THE INDIVIDUAL DEFENDANTS**

35. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if realleged herein.

36. Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances.

37.   As alleged in detail herein, Defendants shot and killed KEITH  without provocation, good cause, or any legal justification.

    a.   Deadly force was completely unnecessary. KEITH had no weapon and was trapped inside of his car so he could not harm anybody.

    b.   Defendants created a deadly and unsafe environment for KEITH and other bystanders by failing to identify themselves and immediately resorting to deadly force without any necessity.

    c.   There was no known call for police service and while KEITH was involved in a pursuit, that does not authorize deadly force.

    d.   There was no probable cause for a reasonable officer to believe that KEITH had committed a crime involving the infliction or threatened infliction of serious physical harm or any crime, or that he was an immediate threat of harm or injury to anyone.

    e.   It was more than practical for the officers to give warning of the imminent use of force, but no such warnings were given.  Instead, the officers decided to "shoot first and ask questions later."   As such, they acted as the "judge, jury and executioner" of KEITH.

38.   Despite the totality of the circumstances fully reflective that any force, let alone deadly force, was unnecessary,  Defendants shot and killed KEITH.

39.   KEITH did not die immediately and thus he endured pain, suffering, fear and emotional distress before his death.

40.   At all relevant times, Defendants were police officers, sheriffs deputies and or their supervisors or managers.

41.   At all relevant times, Defendants acted under color of state law.

42.   The act of Defendants and each o them deprived decedent of his rights under the United States Constitution.

43.   Defendants directed other Defendants in the act that deprived decedent of his constitutional rights; OR

44. Defendants set in motion a series of acts by other Defendants, or knowingly refused to terminate a series of acts by Defendants that Defendants knew or reasonably should have known would cause the defendants to deprive decedent of these rights; OR

45. Defendants knew that the other Defendants were engaging in these acts and knew or reasonably should have known that Defendants conduct would deprive decedent of these rights; and Defendants failed to act to prevent other Defendants from engaging in such conduct; OR

46. Defendants disregarded the known or obvious consequence that a particular training deficiency or omission would cause other Defendants to violate decedent's constitutional rights; and that deficiency or omission actually caused Defendants to deprive decedent of his constitutional rights; OR Defendants each engaged in conduct that showed a reckless or callous indifference to the deprivation by the subordinate of the rights of others.

47. Defendants conduct was so closely related to the deprivation of decedent's rights as to be the moving force that caused the ultimate injury.

48. The conduct of defendants directly and legally caused KEITH VINYARD'S death. That death resulted in medical, hospital and surgical bills, burial and funeral expenses, loss of earnings or earnings capacity, pain, suffering, loss of support and other damages.

49. As a direct result of the conduct of defendants, Plaintiffs have suffered with economic and non economic damages in a sum according to proof at time of trial, and in excess of the minimum jurisdiction of this court.

50. The damages that plaintiffs suffered from also include, but are not limited to, loss of consortium, loss of companionship, care, love and affection, past, present and/or future medical, psychological, psychiatric and/or hospital bills and expenses for treatment for pain, suffering, emotional distress and other injuries caused by the conduct of defendants and each of them. General (non economic) damages are also

sought for emotional distress, grief, anger, fear, trepidation, and chagrin, in a sum according to proof and in excess of the minimum jurisdiction of this court as well as for the loss of the use of money, pre and post judgment interest, litigation costs, attorneys' fees, civil penalties and fines as allowed by law,  and such other damages set out during trial.

51. The aforementioned acts of said defendants were willful, wanton, malicious and oppressive and said misconduct shocks the conscience thereby justifying the awarding of exemplary and punitive damages as to all non-municipal defendants. NO punitive damages are sought against the COUNTY of San Bernardino or City of Hesperia which are statutorily immune from such claims.

## SECOND CLAIM FOR RELIEF
## DELIBERATE INDIFFERENCE TO MEDICAL NEEDS
## BY THE PLAINTIFFS
## AGAINST THE INDIVIDUAL DEFENDANTS

52. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if re-alleged herein.

53. After shooting Mr. Vinyard, defendants and each of them failed to render aid to Mr. Vinyard, who was bleeding from approximately three different bullet wounds. It was not until the ambulance was arriving a significant time later that any feigned attempt was made to try and resuscitate Mr. Vinyard.

54. Defendant made an intentional decision regarding the denial of needed medical care.

55. The denial of needed medical care put the decedent  at substantial risk of suffering serious harm.

56. Defendants did not take reasonable available measures to abate or reduce the risk of serious harm, even though a reasonable officer under the circumstances would have understood the high degree of risk involved—making the consequences of the

defendant's conduct obvious.

57. By not taking such measures the defendant caused the plaintiff's injuries.

58. The conduct of defendants directly and legally caused KEITH VINYARD'S death. That death resulted in medical, hospital and surgical bills, burial and funeral expenses, loss of earnings or earnings capacity, pain, suffering, loss of support and other damages.

59. As a direct result of the conduct of defendants, Plaintiffs have suffered with economic and non economic damages in a sum according to proof at time of trial, and in excess of the minimum jurisdiction of this court.

60. The damages that plaintiffs suffered from also include, but are not limited to, loss of consortium, loss of companionship, care, love and affection, past, present and/or future medical, psychological, psychiatric and/or hospital bills and expenses for treatment for pain, suffering, emotional distress and other injuries caused by the conduct of defendants and each of them. General (non economic) damages are also sought for emotional distress, grief, anger, fear, trepidation, and chagrin, in a sum according to proof and in excess of the minimum jurisdiction of this court as well as for the loss of the use of money, pre and post judgment interest, litigation costs, attorneys' fees, civil penalties and fines as allowed by law,  and such other damages set out during trial.

61. The aforementioned acts of said defendants were willful, wanton, malicious and oppressive and said misconduct shocks the conscience thereby justifying the awarding of exemplary and punitive damages as to all non-municipal defendants. NO punitive damages are sought against the COUNTY of San Bernardino or City of Hesperia which are statutorily immune from such claims.

## THIRD CLAIM FOR RELIEF
## MUNICIPAL LIABILITY FOR VIOLATION
## OF CONSTITUTIONAL RIGHTS (MONELL LIABILITY)

## BY ALL PLAINTIFFS AGAINST DEFENDANTS

## COUNTY OF SAN BERNARDINO

62. Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if re-alleged herein.

63. This action is brought pursuant to 42 U.S.C. §1983 for violation of Plaintiffs' rights under the Fourth and Fourteenth Amendments.

64. SHANNON D. DICUS is the Sheriff for County of San Bernardino.(hereinafter Defendant, part of Defendants or Sheriff.)

65. Defendant JEREMY DEAN, Captain of the Hesperia Patrol Station, working in the capacity of the Acting Chief of Policeof the City of Hesperia. (hereinafter Defendant, part of Defendants or Chief.)

66. While serving as Police Chief, and Sheriff  respectively Defendants  were the final policy-making authorities for police policy in the City of Hesperia and County of Hesperia respectively..[1]

67. Chief and Sheriff exercised control and management over the City's and County's police department/ Sheriff's Department  and they were the final policymakers for Defendants. .

68. As police chief and Sheriff respectively, defendants promulgated policies wherein police officers and deputies were ordered and encouraged to stop, detain, arrest, forcefully seize, and/or prosecute members of our community.  Defendants implemented policies, procedures and practices that deprived Mr. Vinyard of his rights under the laws of the United States and the United States  Constitution.

69. Defendants implemented an express policy, custom, or widespread practice of

---

[1] *Harper v. City of Los Angeles*, 533 F.3d 1010, 1025 (9th Cir. 2008) (police chief is final policymaker for City of Los Angeles, rendering City liable for police chief's "decision that deprived plaintiffs of their constitutional rights"); *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996) ("As to matters of police policy, the chief of police ... may be considered the person possessing final policy-making authority.").

**COMPLAINT FOR DAMAGES DEMAND FOR JURY TRIAL          14**

targeting people for excessive force, rather than engaging in constitutional policing.  The defendants had deliberate indifference to the violations of constitutional rights for people.  Defendants  had a policy to violate Federal Law and the US Constitution by deprivation of equal protection, substantive and procedural due process rights and illegal searches and seizures.

70.  At all relevant times herein, plaintiffs suffered constitutional deprivations by Defendants implementing the unconstitutional policies of the defendants.

71.  Sheriff and Chief ratified the unconstitutional actions of subordinates by continually rewarding officers for unconstitutional conduct through awards, positive evaluations, better assignments, promotions, and increased income/overtime. Thus, the policy, practice and custom of defendants resulted in violating the rights of people to be free from violating equal protection, unreasonable seizures, unlawful arrests, and excessive force.  Thereafter in violation of Plaintiffs' due process rights Defendants proceeded to falsify evidence, and submit false police reports as well as to delay medical treatment so that Mr. Vinyard would die.

72.  At the time of these constitutional violations, defendants CITY and COUNTY had policies in place, and had ratified customs and practices which permitted and encouraged their police officers to violate the US Constitution.

73.  Said policies, customs and practices also called for the City and its Police Department as well as the County and its Sheriff's Department not to discipline, prosecute, or objectively or independently investigate known incidents and complaints of unconstitutional violations of the rights of individuals' under the Fourth and Fourteenth Amendments to the U.S. Constitution.  These violations were exacerbated by defendants lack of properly training its officers in constitutional policing.

74.  Defendant CITY and COUNTY was aware of and deliberately indifferent to a pervasive and widespread pattern and practice within the Sheriffs Department and

Police Department  to violate the rights of individuals' rights under the Fourth and Fourteenth Amendments to the U.S. Constitution.  Said defendants failed to take any reasonable measures to correct this pattern and practice and as a result ratified the actions, and Defendants have been deliberately indifferent to the civil rights violations which resulted in death to Mr. Vinyard.

75.  Said customs and practices called for said defendants, by means of inaction and coverup, to encourage an atmosphere of lawlessness within the police department and to encourage their police officers to believe that engaging in illegal searches, seizures, due process violations and violations of Equal Protection was permissible, and that such conduct would be overlooked or would not result in any discipline for Defendants  employees violating the civil rights of citizens demonstrating ratification of these customs and practices.

76.  Said policies, customs and practices of said Defendants and each of them evidenced a deliberate indifference to the violations of the constitutional rights of Plaintiffs.  This indifference was manifested by the failure to change, correct, revoke, or rescind or otherwise address said customs and practices in light of prior knowledge by said defendants and their subordinate policymakers of indistinguishably similar incidents of unjustified, unreasonable and unlawful arrests, falsification of evidence and  police reports, excessive force and other constitutional violations against citizens.

77.  Defendants and each of them demonstrated a deliberate indifference to the civil rights of Plaintiffs, as further evidenced by defendants   ignoring the history and pattern of prior civil lawsuits alleging civil rights violations, similar to those alleged herein, arising from such misconduct and the related payment of judgments or settlements of such suits, including those alleging improper shootings and killings without justification.

78.  Deliberate indifference is also evidenced by an absence of or by maintenance of an inadequate system of tort claims tracking and by maintaining an inadequate system

of officer discipline and independent and objective investigation by the City and its police department and County and its Sheriff's Department which failed to identify and investigate instances of false and unlawful arrests, excessive force, falsification of evidence, denial of equal protection and other acts of wrong doing towards individuals.

79. Deliberate indifference to the civil rights of victims of the Defendants's unlawful arrests and falsified evidence was also evidenced by the failure of said defendants to adequately train and more closely supervise or retrain officers and/or discipline or recommend prosecution of those officers who engaged in unconstitutional actions towards plaintiffs.

80. Other systemic deficiencies of said defendants which indicated, and continue to indicate, a deliberate indifference to the violations of the civil rights by the officers of the Defendants towards plaintiffs include unjustified killing, shooting and issuance of public statements exonerating officers involved in such incidents prior to the completion of investigations of wrongful arrests or that are contradicted by actual evidence;

81. Said defendants also maintained a system of grossly inadequate training pertaining to the lawful making of arrests, police ethics, the law pertaining to searches and seizures, testifying in trial and perjury, the collection of evidence, and the preparation of police reports regarding the arrests of, injuries to and killing of members of the community..

82. The foregoing acts, omissions, and systemic deficiencies are practices and customs of said defendants as such caused, permitted and/or allowed under official sanction Defendants intentionally overlooked and ignored the rules and laws governing the unconstitutional actions towards members of our community.

83. The foregoing acts, omissions, and systemic deficiencies are practices and customs of said defendants which caused, permitted and/or allowed under official sanction said police officer defendants to believe that unconstitutional arrests would not

1   result in any discipline of them.

84.   Plaintiffs are informed and believe that, unless restrained and enjoined by this court, defendant City and defendant County will continue with its unconstitutional policy towards members of our community.  It is extremely likely that defendants will continue with such unconstitutional violations.

85.   As a direct and legal result of the defendants actions, the plaintiffs were harmed, and are entitled to economic and non economic damages in excess of the minimum jurisdiction of this court, to attorneys fees, litigation costs, fines, penalties, interest and such other relief as the court deems just and proper.

## FOURTH  CLAIM FOR RELIEF
### FOR CIVIL BATTERY
### BY ALL PLAINTIFFS
### AGAINST  BY ALL PLAINTIFFS AGAINST DEFENDANTS

86.   Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if re-alleged herein.

87.   Pursuant to Cal. Government Code §§ 815.2, 815.3, Defendants COUNTY and City of Hesperia are liable for the acts and/or omissions of Defendants since the individual defendants committed the afore stated acts, in the course and scope of employment.

88.   As alleged in detail herein, on or about March 23, 2024, Doe Defendants shot and killed KEITH VINYARD without provocation, good cause, or any legal justification. This intentional act was harmful and offensive to KEITH VINYARD who did not consent to the shooting, or being killed.  He did not die immediately and thus he endured pain, suffering, fear and emotional distress before his death.

89.   The conduct of Defendants directly and legally caused KEITH VINYARD' death. That death resulted in medical, hospital and surgical bills, burial and funeral expenses.

90.  As a direct result of the conduct of defendants, Plaintiffs have suffered with economic and non economic damages in a sum according to proof at time of trial, and in excess of the minimum jurisdiction of this court.

91.  The damages that plaintiffs suffered from also include, but are not limited to economic damages including without limitation, loss of past, present and/or future medical, psychological, psychiatric and/or hospital bills and expenses for treatment for pain, suffering, emotional distress and other injuries caused by the conduct of defendants and each of them. Non-economic or general damages are also sought for all such damages allowed by law, which include without limitation, emotional distress, grief, anger, fear, trepidation, and chagrin, loss of consortium, loss of companionship, care, love and affection in a sum according to proof and in excess of the minimum jurisdiction of this court as well as for the loss of the use of money, pre and post judgment interest, litigation costs, attorneys' fees and such other damages set out during trial.

92.  The aforementioned acts of said defendants were willful, wanton, malicious and oppressive and said misconduct shocks the conscience thereby justifying the awarding of exemplary and punitive damages as to all non-municipal defendants. NO punitive damages are sought against the COUNTY of San Bernardino nor the CITY of Hesperia which are statutorily immune from such claims.

## FIFTH CLAIM FOR RELIEF

## WRONGFUL DEATH

## BY THE PLAINTIFFS

## AGAINST ALL DEFENDANTS

93.  Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if realleged herein.

94.  Pursuant to Cal. Government Code §§ 815.2, 815.3, Defendants COUNTY and CITY are liable for the acts and/or omissions of the individual Defendants since committed in the course and scope of employment.

95. The actions of defendants and each of them, were carried out under color of authority as the COUNTY of San Bernardino deputies and City of Hesperia officers were acting within the course and scope of their employment at all relevant times.

96. On or about March 23, 2024, Defendants acting in their official capacity as peace officers for the COUNTY of San Bernardino, and/or CITY of Hesperia had in their possession weapons issued, and approved by their employer the COUNTY of San Bernardino and/or CITY of Hesperia . Defendants used their weapons to kill KEITH VINYARD by shooting him multiple times without justification.

97. As a direct, legal and proximate result of the shooting, Plaintiffs have sustained pecuniary and non-pecuniary damages resulting from the loss of society, comfort, companionship, attention, services and support of the decedent in an amount in excess of the jurisdictional limit of the Court and subject to proof at trial.

98. As a further direct, legal and proximate result of the acts or omissions of the aforesaid defendants as herein alleged, plaintiffs have incurred special damages, including but not limited to KEITH VINYARD' funeral and burial damages, in excess of the jurisdictional limit of this Court and subject to proof at trial.

99. As further proximate result of the acts or omissions on the part of the defendants, plaintiffs have sustained pecuniary damages resulting from the loss of financial and household contributions that decedent could have reasonably been expected to provide had he not been killed.

100. The aforementioned acts of said defendants were willful, wanton, malicious and oppressive and said misconduct shocks the conscience thereby justifying the awarding of exemplary and punitive damages as to all non-municipal defendants. No punitive damages are sought against defendant COUNTY.  It is statutorily immune.

### SIXTH CLAIM FOR RELIEF
### FOR NEGLIGENCE

---

**BY ALL PLAINTIFFS**

**AGAINST ALL DEFENDANTS**

101.  Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if realleged herein.

102.  The COUNTY and CITY of Hesperia are vicariously liable for the wrongful acts of the individual Defendants pursuant to section 815.2(a) of the California Government Code, which provides that a public entity is liable for the injuries caused by its employees within the course and  scope of the employment if the employee's act would subject him or her to liability.

103.  Police officers, and Deputies including all individual Defendants have a duty to use reasonable care to prevent harm or injury to others. This duty includes using appropriate tactics, giving appropriate commands, giving warnings, and not using any force unless necessary, using less than lethal options, and only using deadly force as a last resort.

104.  Defendants breached this duty of care. The actions and inactions of Defendants were negligent and reckless, including but not limited to:

a.  the failure to properly and adequately assess the need to use deadly force against DECEDENT;

b.  the negligent tactics and handling of the situation with DECEDENT, including pre-shooting negligence;

c.  the negligent use of deadly force against DECEDENT;

d.  the failure to provide prompt medical care to DECEDENT;

e.  the failure to properly train and supervise employees, both professional and non-professional, including YUEN and AHMED, with respect to the use of deadly force;

f.  the failure to ensure that adequate numbers of employees with appropriate education and training were available to meet the needs of and protect the rights of DECEDENT;

g.    Ratification of prior acts of excessive force, or fabrication of evidence; and

h.    the negligent communication of information during the incident.

105.  As a direct and proximate result of Defendants' conduct as alleged above, and other undiscovered negligent conduct, DECEDENT was caused to suffer severe pain and suffering and ultimately died. Plaintiffs also have been deprived of the life-long love, companionship, comfort, support, society, care and sustenance of DECEDENT, and will continue to be so deprived for the remainder of their natural lives.

106.  Plaintiffs bring this claim individually and as successors in interest to DECEDENT, and seek both wrongful death and survival damages under this claim.

### SEVENTH CLAIM FOR RELIEF
### BANE ACT BY THE PLAINTIFFS
### AGAINST ALL DEFENDANTS

107.  Each and every allegation set forth in the preceding paragraphs is incorporated herein by this reference with the same effect as if realleged herein.

108.  Defendants acted violently against KEITH to prevent him from exercising his rights under federal and state laws, e.g., freedom of bodily integrity, freedom from unlawful seizure, freedom from unlawful restraint on movement/liberty.

109.  Defendants intended to deprive KEITH of his enjoyment of the interests protected by federal and state laws.

110.  KEITH was harmed as were the other plaintiffs herein.

111.  Defendants' conduct was a substantial factor in causing KEITH's harm.

112.  The conduct of defendants directly and legally caused KEITH VINYARD' death. That death resulted in medical, hospital and surgical bills, burial and funeral expenses.

113.  As a direct result of the conduct of defendants, Plaintiffs have suffered with economic and non economic damages in a sum according to proof at time of trial, and in excess of the minimum jurisdiction of this court.

114. The damages that plaintiffs suffered from also include, but are not limited to, loss of consortium, loss of companionship, care, love and affection, past, present and/or future medical, psychological, psychiatric and/or hospital bills and expenses for treatment for pain, suffering, emotional distress and other injuries caused by the conduct of defendants and each of them. General damages are also sought for emotional distress, grief, anger, fear, trepidation, and chagrin, in a sum according to proof and in excess of the minimum jurisdiction of this court as well as for the loss of the use of money, pre and post judgment interest, litigation costs, attorneys' fees and such other damages set out during trial.

115. The aforementioned acts of said defendants were willful, wanton, malicious and oppressive and said misconduct shocks the conscience thereby justifying the awarding of exemplary and punitive damages as to all non-municipal defendants. NO punitive damages are sought against the COUNTY of San Bernardino and/or CITY of Hesperia  which are statutorily immune from such claims.

## **EIGHTH CLAIM FOR RELIEF**

**Failure to Furnish / Summon Medical Care (California State Law, California Government Code §§ 844.6 and 845.6.)**

**(Against INDIVIDUAL DEFENDANTS, and DOES 1-10)**

116. Plaintiffs re-allege and incorporate by reference the allegations contained in this complaint, as though fully set forth herein.

117. Defendants owed decedent a duty of care to provide him immediate medical and health care.

118. The conduct of Defendants alleged herein, including but not limited to the facts that Defendants knew or had reason to know that decedent was in need of immediate medical and mental health care and that Defendants failed to take reasonable action to summon or provide that care, resulting in decedent's death as alleged herein, violated California state law, including Cal. Govt. Code §§ 844.6 and 845.6.

119. The alleged conduct of Defendants was committed within the course and scope of their employment.

120. As a direct and proximate result of Defendants' breach, Plaintiffs suffered injuries and damages causing great pain and leading to her death, as alleged herein.

121. The aforementioned acts of Defendants were willful, wanton, malicious, and oppressive, thereby justifying an award of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

WHEREFORE, Plaintiffs pray for the following:

1. Compensation for both economic and non-economic damages suffered and to be suffered;

2. Legal and other expenses incurred by Plaintiffs;

3. Compensatory damages and nominal damages caused by deprivation of Plaintiff's constitutional rights;

4. Litigation costs;

5. Attorneys' fees, as allowed by statute;

6. Interest;

7. Civil Penalties as allowed by law.

8. Punitive damages (against the non-municipal Defendants only);

9. Survival benefits, and pain and suffering of decedent before he died.

10. Any other relief or damages allowed by law, or statutes not set out above, and such further relief as this Court deems just and proper at conclusion of trial.

Date: July 12, 2024

Respectfully Submitted,
Brad Gage Law, APC

By ___*/Bradley C. Gage*_____
Bradley C. Gage
Milad Sadr
Attorneys for Plaintiffs

**COMPLAINT FOR DAMAGES DEMAND FOR JURY TRIAL**          24

C:\Users\ybarrera\Brad Gage Law\Brad Gage Law Team Site - Active
Cases\V\VINYARD v San Bernardino County\PLEADINGS\COMPLAINT\7-12-24
COMPLAINT FOR DAMAGES fin rev.wpd